UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

―――――――――――――――――――――――――――――
                                                            )
WILDEARTH GUARDIANS; POWDER RIVER )
BASIN RESOURCE COUNCIL; and              )
SIERRA CLUB,                                          )
                                                            )
            Plaintiffs,                                  )
v.                                                          )   Case No.: 1:11-cv-03171-JLK-AP
                                                            )   Honorable John L. Kane
UNITED STATES FOREST SERVICE;     )
THOMAS TIDWELL, in his official capacity as )
Chief of the United States Forest Service;    )
MARIBETH GUSTAFSON, in her official     )
capacity as the Acting Regional Forester of United )
States Forest Service; and GLENN CASAMASSA, )
 in his official capacity as the Acting Deputy )
Regional Forester of United States Forest Service, )
                                                            )
            Federal Defendants.                   )
―――――――――――――――――――――――――――――)

―――――――――――――――――――――――――――――――――――――――――――

**FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER VENUE TO THE DISTRICT OF WYOMING**
―――――――――――――――――――――――――――――――――――――――――――

Plaintiffs challenge the Forest Service's consent decision related to the South Porcupine lease for surface coal mining in the Thunder Basin National Grassland in the Powder River Basin of Wyoming. There is a strong local interest in resolving this dispute over the management of the Thunder Basin National Grassland. For these reasons and those explained in detail below, the Court should grant Federal Defendants' motion and transfer this case to the District of Wyoming.

**BACKGROUND**

As Plaintiffs acknowledge, the Thunder Basin National Grassland is located entirely in Wyoming. Compl. ¶ 2; Record of Decision ("ROD") for the South Porcupine Field Lease By

1

Application at 1 (attached hereto as Exh. A). The Grassland encompasses 572,000 acres in the Power River Basin in northeast Wyoming. Compl. ¶ 2 (ECF-1). Plaintiffs are (1) Wildearth Guardians, a nonprofit organization based in Santa Fe, New Mexico with offices in Denver and Phoenix with members across the West, including Wyoming, Compl. ¶¶ 21-22; (2) Powder River Basin Resource Council, a conservation group located in the Powder River Basin of Wyoming, *id.* ¶ 23; and (3) Sierra Club, a national non-profit organization with a Wyoming Chapter with approximately 800 members in Wyoming, *id.* ¶ 25.

Plaintiffs challenge the Forest Service's consent related to the United States Bureau of Land Management's ("BLM") decision to lease approximately 3,243 acres of federal coal located in the Powder River Basin of Wyoming in Campbell and Converse Counties, and known as the South Porcupine tract ("Project"). The Forest Service's consent decision applies to only 1,638 acres of the total surface lands in the National Grassland under the Forest Service's jurisdiction. Compl. ¶ 9. BTU Western Resources, Inc. ("BTU"), which owns an active coal mine adjacent to the tract, requested the lease in 2006 under BLM's "lease by application" regulations. Following five years of careful environmental analysis, BLM issued its decision in March of 2010. The Environmental Impact Statement ("EIS") evaluated the South Porcupine Lease Tract as well as other five other leases adjacent to the lease tract, the Wright Area coal tracts. The Forest Service was a cooperating agency to the EIS.

Over one year after the EIS was published, on July 14, 2011, the Forest Service issued a ROD for the tract. The approving officer for the ROD, Forest Supervisor Phil Cruz, is located in Wyoming. ROD at 38. On August 27, 2011, Plaintiffs filed an administrative appeal of the ROD. The administrative appeal was decided by Acting Regional Forester, Glenn Casamassa, who is located in Golden, Colorado. On October 3, 2011, Plaintiffs held an informal resolution

meeting concerning their appeal with the Forest Supervisor, Phil Cruz, in Wyoming. Compl. ¶ 167. There will be a competitive lease sale for the tract, which will be held in Wyoming. Comp. ¶ 112; ROD at 2, 5.

Plaintiffs bring this suit under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.*, the Surface Mining and Control Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* Plaintiffs allege that the ROD for the South Porcupine lease violates NEPA and the APA because the Forest Service: failed to analyze a reasonable range of alternatives; failed to adequately consider groundwater mitigation measures; and failed to adequately analyze direct and indirect air quality impacts. Compl. ¶¶ 184-208. Plaintiffs further allege that Forest Service violated NFMA because it failed to comply with the Thunder Basin National Grassland Land and Resource Management Plan ("Grassland Plan") and SMCRA because it issued the ROD without certain required findings from the Secretary of Agriculture and the Secretary of Interior. Compl. ¶¶ 175-181, 209-217.

## ARGUMENT

Plaintiffs' suit should be transferred to the District of Wyoming because the case is properly venued in the District of Wyoming, and transferring venue would be in the interest of justice and the convenience of the parties and witnesses.

## LEGAL STANDARD

This Court has the authority under 28 U.S.C. § 1404(a) to transfer this case to the District of Wyoming. Section 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." The Court has broad discretion to adjudicate motions to transfer pursuant to 28 U.S.C. § 1404(a). *See Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991). To justify transfer, defendant must establish that: (1) plaintiffs could have originally brought the action in the proposed transferee district, the District of Wyoming and (2) the public and private interest factors weigh in favor of transfer to that court. *See Friends of the Norbeck v. U.S. Forest Serv.*, No. 10-cv-2164-AP, 2010 WL 4137500 (D. Colo. Oct. 18, 2010); *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964) (superseded by statute on other grounds); *Chrysler Credit Corp.,* 928 F.2d at 1515.

In resolving motions to transfer under 28 U.S.C. § 1404(a), courts in this Circuit have followed the case-by-case approach, *see, e.g., Chrysler Credit Corp.,* 928 F.2d at 1516, exercising the discretion to transfer "according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen,* 376 U.S. at 622); *see Piper Aircraft v. Reyno*, 454 U.S. 235, 257 (1981). To that end, the Tenth Circuit has identified nine factors to weigh in determining whether transfer is appropriate: (1) the plaintiff's choice of forum; (2) the convenience and location of witnesses (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) the relative congestion of the docket; (7) conflict of laws issues; (8) the advantage of having a local court determine questions of local law; and,(9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.,* 928 F.2d at 1516 (citing T*exas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *Friends of the Norbeck*, 2010 WL 4137500 at *2.

As Federal Defendants establish below, the connection between Plaintiffs, the controversy, and the chosen forum in this case – the District of Colorado– is highly attenuated, thus favoring transfer to the judicial district where the South Porcupine lease is located, the District of Wyoming.

## I.   THIS CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF WYOMING

As a threshold matter, this case could have been brought in the District of Wyoming. The only limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a) is the requirement that the new forum be a "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a). Where the case "might have been brought" is determined by 28 U.S.C. § 1391(e)(1), which provides that in suits against agencies of the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides . . . ." *Id.* Because all of the claims in this case could have been brought in the District of Wyoming, transfer of Plaintiffs' claims to that judicial district is proper.

Plaintiffs here might have properly brought their claims in the District of Wyoming on any number of bases under 28 U.S.C. § 1391(e). For example, the project Plaintiffs challenge is located in the Thunder Basin National Grasslands, which lies entirely within the District of Wyoming. Therefore, that is "the judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1); *see Fodor v. Hartman*, No. 05–CV–02539–PSF–BNB, 2006 WL 1488894 at *4 (D. Colo. May 30, 2006) ("test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim' "). Additionally, Plaintiffs' claims could have been brought in the District of Wyoming because it is a "judicial district in

5

which [] a defendant in the action resides . . . ." 28 U.S.C. § 1391(e)(1). The headquarters office for the Thunder Basin National Grassland is in Wyoming, as is the approving officer of the ROD, Phil Cruz, and thus the Forest Service can be considered to reside in the District of Wyoming.

Therefore, because this case "might have been brought" in the District of Wyoming, the Court has power to transfer the case there. 28 U.S.C. § 1404(a).

## II.   THE INTEREST OF JUSTICE FAVORS TRANSFER

The discretionary factors this Court considers weigh heavily in favor of transfer. Even though venue may be proper in this District, this case should be transferred to the District of Wyoming because it is where the South Porcupine lease is located, where the operative facts occurred, and where the local interest is substantial. Additionally, although of less weight here, the District of Wyoming docket is substantially less congested than that of the District of Colorado.

### A.   Plaintiffs' choice of forum is entitled minimal consideration

As a threshold matter, it is common ground that plaintiff's choice of forum receives little deference if plaintiff does not reside in the district. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010); *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006); *Norbeck*; 2010 WL 4137500 at *3; *Bailey v. Union Pac. R.R.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005). One of the Plaintiffs has its principal place of business in Wyoming and another plaintiff has a Wyoming-based office dedicated to coal issues. Plaintiffs, in contrast, have limited connections to this

6

forum. No Plaintiff has a principal place of business in Colorado. Nor do Plaintiffs allege that their members primarily reside in this District. These facts weigh strongly in favor of transfer.

Here, the Forest Service officials directly involved in the planning and approval of the Forest Service's consent to the Project reside in the state of Wyoming. Specifically, the Forest Supervisor, who approved the Project, resides in Wyoming. Although the appeal deciding officer (who issued the final decision on Plaintiffs' administrative appeal) resides in Golden, Colorado, the vast majority of the rest of the operative facts and the review process occurred in Wyoming. Not only is the administrative record located there, but also the entire public process attendant to the Forest Service's consent decision occurred in Wyoming.[1] Naming a federal officer as a defendant "does not alone anchor venue." *Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior,* 669 F. Supp. 2d 88, 95 (D.D.C. 2009); *Airport Working Group v. United States Dep't of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (any role played by officials in D.C. was overshadowed by fact that permitting process, including public comments, occurred in California); *Norbeck*; 2010 WL 4137500 at *3. Thus, taking into account "considerations of convenience and justice," *Van Dusen*, 376 U.S. at 616, Wyoming is the most appropriate venue for this case to be heard.

**B.   The Local Interest Favors Transfer Because this Case Involves a Dispute over the Management of Lands Located in Wyoming**

Most importantly, this case is a matter of local interest that should be adjudicated in the local forum. "Land is a localized interest because its management directly touches local citizens." *South Utah Wilderness Alliance v. Norton,* 315 F. Supp. 2d 82, 88 (D.D.C. 2004) ("*SUWA*"). The local interest in having land management decisions heard in the jurisdiction where the land is located is a significant element in determining whether the interest of justice

---

[1] For example, the original applications for the leases were made to the BLM Wyoming state office. Moreover, the Wyoming-based office of BLM served as the lead agency of the EIS.

favors transfer. *Sierra Club v. U.S. Dept. of State*, No. C 09-04086 SI, 2009 WL 3112102, at * 3 (N.D. Cal. Sept. 23, 2009) ("Courts have observed that environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action."); *see also SUWA*, 315 F. Supp. 2d at 88-89 (transferring to Utah a case challenging decision to allow sale of oil and gas leases on Utah lands managed by the Bureau of Land Management); *Norbeck*; 2010 WL 4137500 at *4 (transferring case challenging Forest Service's wildlife project to South Dakota, where the project was located). As the Supreme Court has stated,

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. *There is a local interest in having localized controversies decided at home.*

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (emphasis added).

The residents of Wyoming have a "compelling interest . . . in having this localized controversy decided at home" because this case involves land management in Wyoming. *Trout Unlimited v U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996). "[S]uits such as this one, which involve . . . environmental regulation and local wildlife – matters that are of great importance in the State of [Wyoming]– should be resolved in" Wyoming "where the people 'whose rights and interests are in fact most vitally affected'" are located. *Id*. at 19-20; *Friends of the Norbeck*, 2010 WL 4137500 at *4.

To that end, this case raises issues that directly affect Wyoming citizens. Plaintiffs allege that the Grassland "is important to the people of the Powder River Basin." Compl. ¶ 4. Among other things, Plaintiffs allege that ranching on the Grasslands "is a significant economic enterprise." Compl. ¶ 4. Plaintiffs further allege that the Grasslands "provides abundant recreational opportunities" for the people of the Powder River Basin, *id.*, and that the Grasslands

8

harbor "twenty rare plant communities," and is "home to a variety of wildlife species." Compl. ¶¶2-3. In addition, Plaintiffs allege that BLM has failed to ensure timely reclamation of the area's — that is Wyoming's — existing coal mines. Compl. ¶14. Thus, this Court should find that this case presents a local controversy that should be decided in its home, Wyoming. *See National Wildlife Fed'n v. Alexander*, 458 F. Supp. 29, 30-31 (D.D.C. 1978) (transfer from District of Columbia to the District of South Carolina, where case challenged a permit authorizing construction of a port terminal on a South Carolina river; court transferred in part because "the decision whether or not to proceed with the construction of the port terminal will impact primarily upon South Carolina.").

Moreover, local communities near the Thunder Basin National Grasslands were involved in the public comment process during the development of the EIS and in connection with the Forest Service's consent decision. A public scoping meeting was held on July 24, 2007 in Gillette, Wyoming for the EIS. ROD at 30. Legal announcements notifying the public of the intent to prepare the EIS were published in the local newspapers, such as the *Gillette News-Record* and the *Douglas Budget*. *Id.* A notice of the opportunity to comment on the Forest Service's consent decision was published in the *Laramie Boomerang*. *Id.* at 31. The Forest Service also received comment letters from multiple individuals and entities in Wyoming on its consent decision. *Id.* at Appendix C.

Finally, the presumption that localized controversies should be decided in the forum where the project is located has particular resonance where, as here, the State of Wyoming not only was a cooperating agency for the EIS but also will have an active role in permitting, air quality, and reclamation for the Project. *See American Littoral Soc'y v. U.S. Envtl. Protection Agency*, 943 F. Supp. 548, 550-51 (E.D. Pa. 1996) (noting that interests of justice "most strongly

9

recommend[ed]" transfer of water quality litigation from Pennsylvania to Delaware where disposition of case would "affect not only private citizens but also industries in the state of Delaware;" transferring case would not harm interests of parties involved, and would "bring the adjudication of this dispute to the venue directly affected by the interests at stake in this case"). To that end, an Assistant Attorney General for the State of Wyoming has conferred with undersigned counsel and represented that the state will be filing a petition for intervention.[2] The state's desire to intervene further illustrates the importance and localized nature of this litigation. *Friends of the Norbeck*, 2010 WL 4137500 at *4.

Thus, the localized interest in the Project favors transfer to Wyoming.

### C. The Courts' Relative Caseloads Favor Transfer

The Tenth Circuit has noted that the most relevant statistics to evaluate a court's congestion include the pending cases per judge and the average weighted filings per judge. *Emp'rs Mut. Cas.,* 618 F.3d at 1169. The District of Wyoming has a substantially less congested docket than the District of Colorado. The most recent statistics provide that the overall filings in the District of Wyoming are 735, compared to 4,041 in the District of Colorado. *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx. Similarly, the average of filings per judgeship in the District of Wyoming is 245, compared to 515 in the District of Colorado. *Id.* Accordingly, the civil docket in the District of Colorado is approximately one-hundred percent more congested than that of the District of Wyoming. Judicial economy weighs in favor of transfer to the District of Wyoming.

### D. The Other *Chrysler* Factors are Neutral or Support Transfer

---

[2] Along with one other organization and the project applicant, who has significant operations in Wyoming, the Wyoming Mining Association has also contacted counsel for the Federal Defendants and indicated that it intends to intervene in this lawsuit.

Finally, the remaining factors for deciding a venue motion are either neutral or support the proposed transfer. The claims in this case will be reviewed under the APA on the basis of an administrative record. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Friends of the Norbeck*, 2010 WL 4137500 at *3; *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560 (10th Cir. 1994). "Ordinarily, in a record review case, there would be no need for witnesses or other sources of proof." *Friends of the Norbeck*, 2010 WL 4137500 at *3. As a result, convenience of witnesses "has less relevance." *Trout Unlimited*, 944 F. Supp. at 18; *see also SUWA*, 315 F. Supp. 2d at 88 (not considering convenience to witnesses where court's review would be based upon administrative record and parties agreed witnesses would not be necessary).[3]

Moreover, while Plaintiffs' attorneys in this case are based in the District of Colorado, that fact should be given very little weight in determining whether the case should be transferred. *See Friends of the Norbeck*, 2010 WL 4137500 at *4 (location of counsel is irrelevant); *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue"); *National Wildlife Fed. v. Harvey*, 437 F. Supp. 2d 42, 48 (D.D.C. 2006) (same). Further, the remaining *Chrysler* factors are largely irrelevant in this record review case. As this Court noted in transferring a similar action to the forum where the project was located, "[t]here is no question as to the enforceability of any potential judgment; there are no perceivable advantages or obstacles to a fair trial; and there are no questions of local law which either court would be better suited to address." *Friends of the Norbeck*, 2010 WL 4137500 at *5. So too here.

---

[3] While witnesses are unlikely to be necessary to resolution of this matter, to the extent that depositions or court testimony are required, for example, to attest to harm which might occur from the injunctive relief that Plaintiffs request, all of Federal Defendants' employees who would testify are located within the District of Wyoming.

11

Accordingly, the Court should conclude that the interest of justice favors transfer to the District of Wyoming and that litigation there would not result in inconvenience to the parties or any witnesses.

## CONCLUSION

For the foregoing reasons, the Court should grant Federal Defendants' motion and transfer this case to the United States District Court for the District of Wyoming.

Respectfully submitted on this 2nd day of February, 2012,

>IGNACIA S. MORENO
>Assistant Attorney General
>United States Department of Justice
>Environment and Natural Resources Division
>
>
>   /s/ *Marissa Piropato*
>MARISSA PIROPATO
>Trial Attorney (MA Bar #651630)
>United States Department of Justice
>Environment & Natural Resources Division
>Natural Resources Section
>P.O. Box 663
>Washington, D.C. 20044-0663
>marissa.piropato@usdoj.gov
>(202) 305-0470
>
>Attorney for Federal Defendants

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 2, 2012, I electronically filed the foregoing notice with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Plaintiffs' counsel.

        /s/ *Marissa Piropato*
        MARISSA PIROPATO